IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEBRA A. BURKS,

Plaintiff, No. CIV S-05-0921 GGH

vs.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant. ORDER

_____________________________/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, this case is remanded to the Commissioner for payment of benefits.

BACKGROUND

Plaintiff was born November 19, 1954. From 1988 to 2003, she worked at E.F. Gallo Winery in Modesto, responsible for labeling and filling bottles, packing and carrying cases of bottles, and clean up, requiring occasional lifting up to fifty pounds. (Tr. at 107-108, 130). Plaintiff is 5'6" tall and weighs 125 to 130 pounds. (Tr. at 40, 201, 273).

\\\\\

Plaintiff received a closed period of benefits for the period May 27, 1998 to August 26, 1999 due to colon cancer and degenerative disc disease. Plaintiff underwent colon surgery in April 1998 and completed chemotherapy May 1999. (Tr. at. 59). Plaintiff underwent neck surgery in 1996, apparently fusion of vertebrae at C6-C7. (Tr. at 131-132).

Plaintiff returned to her work at E.F. Gallo until October 18, 2000, when she left following injury to her neck. (Tr. at 157-160). Earlier, in May 2000, plaintiff commenced treatment for chemical pneumonitis secondary to exposure to toxic fumes at work, and in August 2000 injured her back while moving a palette at work. In March 2001, plaintiff underwent fusion of vertebrae at C5-C6, performed by Dr. Louis Nelson. (Tr. at. 131-138, 169-178, 199-200, 213, 233-34, 243).

On January 7, 2003 (Tr. at 92-94), plaintiff filed the instant application for disability benefits, alleging she became unable to work on October 18, 2000, due to "neck surgery, neck stiffness, chronic pain, arm and finger pain, [and] muscle spasms in neck," explaining that "I cannot look around and if I use my hands the pain increases." (Tr. at 92, 97). Following the initial denial of plaintiff's application (Tr. at 67), plaintiff alleged in her Reconsideration Disability Report (Tr. at 117) that the Commissioner also "should consider the fact that due to having colon cancer I can't hold down a day job. My upper GI ulcers are aggravated by a lot of different oders [sic]. I can't stand in one place too long, I have trouble looking around. I have to sit comfortably with neck support from a chair. I don't sleep well. It hurts to drive. Mentally, I have problems from my work hurting me on purpose and from pain." Plaintiff's application was denied upon reconsideration (Tr. at 68), and plaintiff requested an administrative hearing (Tr. at 79-80).

After the hearing, held on May 24, 2004 (Tr. at 23-49), Administrative Law Judge (ALJ) Peter F. Belli determined that plaintiff was not disabled in a decision dated October 21,

\\\\\

\\\\\

2004 (Tr. at 13-20).[1] The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and in insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. Medical records demonstrate that the claimant has chronic neck and back pain, myofascial pain syndrome, and status post cervical fusion, impairments that are considered severe based on the requirements in the Regulations.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation (Lester v. Chater, 81 F.3d 821, 828, n. 5 (9th Cir. 1995):

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n. 5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

5. The claimant's allegations regarding her limitations are not totally credible.

6. The claimant retains the residual functional capacity for light work with inability to lift or carry over 20 pounds occasionally; preclusion from climbing ladder, rope, or scaffold with occasional climbing of ramp/stairs; and occasional balancing, crouching, crawling, kneeling, and stooping. In an 8-hour workday, she can stand/walk for 6 hours and sit for 6 hours.

7. The claimant is unable to perform her past relevant work.

8. The claimant is a younger individual between the ages of 45 and 49 (20 C.F.R. § 404.1563).

9. The claimant has a high school education and has unskilled work experience but she has not acquired any transferable work skills.

10. Additional restrictions have reduced the claimant's capacity for light work.

11. Although the claimant cannot perform the full range of light work, using the Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she can perform.

12. The claimant is not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(g)).

ISSUES PRESENTED

Plaintiff makes the following claims: the ALJ provided legally insufficient reasons for rejecting the opinion of plaintiff's treating physician; the ALJ provided legally insufficient reasons for rejecting plaintiff's testimony; the ALJ's finding plaintiff does not have a severe mental impairment is not supported by substantial evidence; the ALJ erred by failing to consider the combined effect of plaintiff's impairments including her mental impairment; the ALJ's finding plaintiff can perform other substantial gainful activity is not supported by substantial evidence; and the court should remand this case for payment of benefits.

\\\\\

LEGAL STANDARDS

Title II of the Social Security Act provides benefits to "insured" individuals who have contributed to the program and have demonstrated an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423. The Commissioner makes this assessment by a five-step analysis. First, the claimant must not currently be working. 20 C.F.R. § 404.1520(b). Second, the claimant must have a "severe" impairment or impairments. 20 C.F.R. § 404.1520(c). Third, if one or more of the claimant's impairments meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, considering the claimant's residual functional capacity, if the claimant can do his past work, benefits are denied. 20 C.F.R. § 404.1520(e). Fifth, considering the claimant's age, education, work experience, and residual functional capacity, if the claimant cannot do his past work and cannot do other work that exists in significant numbers in the national economy, benefits are awarded. 20 C.F.R. § 404.1520(f).

The court reviews the Commissioner's decision to determine whether it is (1) based on proper legal standards, and (2) supported by substantial evidence. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

\\\\\
\\\\\
\\\\\

ANALYSIS

    A.  The ALJ Erred at Step Two of the Sequential Analysis

The Ninth Circuit has set forth the requirements of the step-two severity determination as follows (Smolen v. Chater, 80 F. 3d 1273, 1290-91 (9th Cir. 1996) (citations and internal quotations omitted)):

> At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. . . . According to the Commissioner's regulations, an impairment is not severe if it does not significantly limit the claimant's physical ability to do basic work activities. Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. Also, he is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. Finally, the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.

The ALJ found, at step two, that plaintiff has severe impairments of "chronic neck and back pain, myofascial pain syndrome, and status post cervical fusion." The ALJ rejected plaintiff's contentions she has severe mental and gastrointestinal impairments.

    1.  Pain

The ALJ erred in finding that plaintiff's severe impairments include "chronic neck and back pain."[2] It is well established that "pain" is a symptom, not a medically determinable

---

[2] In contrast, myofascial pain syndrome, like fibromyalgia, are increasingly recognized as potentially severe impairments within the meaning of the Social Security Act. See, e.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (fibromyalgia); Rieger v. Barnhart, Slip Copy, 2005 WL 3395196 (9th Cir. 2005) (myofascial pain syndrome); Billings v. Apfel, 165 F.3d 35 (9th Cir. 1998) (unpublished opn) (myofascial pain syndrome); see also Rivera v. Barnhart, 2006 WL 1227276, at *7, n. 18 (S.D.N.Y.,2006), which provides: "See Brunson v. Barnhart, No. 01-CV-1829, 2002 WL 393078, at *15 (E.D.N.Y. Mar. 14, 2002) ("Both conditions

impairment. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc); Smolen, 80 F.3d at1281. "[S]ymptoms . . . are an individual's own perception or description of the impact of his or her physical or mental impairment(s). . ." SSR 96-4p; 20 C.F.R. § 404.1528(a). "'[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.'" Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005), quoting SSR 96-4p; see also 20 C.F.R. § 404.1529(b) ("[S]ymptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"). Thus, plaintiff's cervical fusion and degenerative disc disease constitute severe medically determinable impairments; not the resulting neck and back pain per se.

Moreover, as a result of finding plaintiff's neck and back pain a severe impairment, the ALJ neglected to assess the impact of this pain on plaintiff's residual functional capacity. The ALJ also failed entirely to address plaintiff's pain symptoms associated with her myofascial pain syndrome. (See n. 2, supra). Thorough evaluation of a claimant's subjective complaints is integral in assessing both severity of an impairment and its impact on the claimant's residual functional capacity. "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999) (citations and internal quotations omitted). See also 20 C.F.R. § 404.1529, and Social Security Ruling (SSR) 96-7p. "[W]here the ALJ improperly rejects the

---

[fibromyalgia and myofascial pain syndrome] have been recognized as potentially severe impairments that may support a claim of disability under the Social Security Act.") (citing Lisa v. Secretary of Health & Human Servs., 940 F.2d 40, 44-45 (2d Cir.1991)).

claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited . . . that testimony is . . . credited as a matter of law." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citations and internal quotations omitted; see also 20 C.F.R. §§ 404.1529, and Social Security Ruling 96-7p.

The ALJ's analysis of plaintiff's pain symptoms provides in its entirety (Tr. at 17.) :

> Due to the discrepancies between the claimant's allegations and the information contained in the medical reports, her statements are not fully credible. The claimant alleged arm and finger pain. However, orthopedic consultative evaluation in April 2003 reported that she had no manipulative restrictions on reaching, handling, feeling, grasping, or fingering (Exhibit 7F/5). She stated that she could not stand in one place too long (Exhibit 5E/1). Nonetheless, consultative examination in April 2003 showed that based on the examination, she had no restriction in standing, walking, and sitting (Exhibit 7F/5). In addition, she had normal gait in May 2003 (Exhibit 13F/10).

This reasoning is inherently inadequate, e.g., lack of manipulative restrictions does not foreclose the presence of arm or finger pain based upon undisputed cervical impairment. That is the lesson of Bunnell. More importantly, the analysis is far too narrow. The ALJ did not address plaintiff's pain medications or their side effects, or the many other non-medication treatments plaintiff has pursued. See SSR 96-7p, 20 C.F.R. § 404.1529(c) (ALJ must consider the type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate pain or other symptoms, and consider treatments other than medication, and measures other than treatment used to relieve pain or other symptoms). Thus, the ALJ did not identify plaintiff's pain medications other than to state incorrectly, in rejecting her claim of mental impairment, that "[t]he only medication taken for her mental condition is medical marijuana (Exhibit 8E/2)." (Tr. at 17). Not only does the cited portion of the transcript contain plaintiff's statement she also takes medical marijuana for chronic pain and digestive problems, but identifies two additional prescriptions plaintiff takes to treat "chronic pain," viz., Soma (muscle relaxant) and Norco (hydrocodone/acetaminophen). The record is replete with medications prescribed to plaintiff for

pain treatment. See, e.g., Tr. at 101, 157-161 (Soma, Darvocet, Celebrex, Prozac, Prednisone, trigger-point injections). Plaintiff also testified she is limited to taking muscle relaxants "every couple of weeks at night" due to her digestive problems. (Tr. at 33-34). Nor did the ALJ address plaintiff's reliance on soft collars, heating pads, reclining, hydrotherapy, physical therapy, cervical traction, massage, biofeedback, mediation and counseling. (Tr. at. 180-198, 248-274).

Most significantly, the ALJ failed to address plaintiff's testimony regarding the intensity of her pain and its impact on her daily activities. Plaintiff testified she has "two different areas of my neck that have been operated on . . . two more neck disks that are herniated and inoperable . . . two shoulder surgeries done on my right shoulder. The plate is missing. I had part of my collarbone shaved on my right side. . . I have a back injury on my right side that either hits my sciatic when it bulges, or it inflames on the top. I have a torn meniscus in my . . . right knee. I have headaches . . . My fingers go numb and I have pain in them. I drop things daily." (Tr. at. 32-33). Plaintiff testified that sitting is always uncomfortable, particularly to her neck, but she can tolerate it for thirty minutes to an hour at one time, including driving; plaintiff spends much of her day in a reclining position to support her head and neck; plaintiff grooms herself but only washes her hair "when I have to" because the process is "too painful;" she prefers slip-on shoes and sandals; it is painful to walk and plaintiff feels unsteady, and about twice a year plaintiff needs to use a cane; plaintiff can take steps only by moving both feet to each step; plaintiff cares for her home with her husband's help, including his assistance in cleaning and shopping; plaintiff can't work more than an hour-and-a-half without a break; plaintiff likes to garden where she can pace herself from one thing to another; plaintiff also cares for her granddaughter, now 12, who attends school but has some special needs. (Tr. at 33, 37, 38-40, 42, 43, 45, 47-48). Plaintiff's statements are consistent in her daily activities questionnaire, including use of a soft collar when driving (Tr. at 113, 111-116).

The ALJ failed to consider any of this testimony or to meet his obligation of supporting his negative credibility assessment with a specific finding that plaintiff's daily

pursuits are transferable to a work setting. Morgan v. Apfel,169 F.3d at 600, citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[o]ne does not need to be 'utterly incapacitated' in order to be disabled").

Because the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective complaints of pain, the court must credit plaintiff's testimony as a matter of law. Lester, 81 F.3d at 834.

2. Gastrointestinal Impairment

Plaintiff testified that since her 1998 surgery for colon cancer resulting in the removal of half her colon, she usually spends three hours a day in the restroom in an effort to manage her "horrible bowel problems" but still has accidents. (Tr. at 32, 45; see also 30, 31, 36, 44). The ALJ addressed this complaint only to find that plaintiff does not have a severe gastrointestinal impairment. The ALJ stated in full (Tr. at 17):

> There is [] no indication of severe gastro-intestinal impairment. Abdomen diagnostic imaging studies in June 2002 were essentially normal (Exhibit 2F/3-5). Moreover, discharge summary of June 2002 indicated normal colon without evidence of cancer or obstruction (Exhibit 2F/1).

This conclusion is unsupported by the record. Surgical removal of a significant portion of the colon resulting in uncontrollable bowel movements has "more than a minimal effect on an individual's ability to work," Yuckert v. Bowen, 841 F.2d at 306. Plaintiff's colectomy and resulting symptoms of incontinence constitute both a severe impairment and significant nonexertional limitation..

Because the ALJ failed even to address plaintiff's complaints of incontinence, the court credits plaintiff's testimony as a matter of law. Lester, 81 F.3d at 834.

3. Mental Impairment

Plaintiff asserts the ALJ erred in concluding that plaintiff does not have a severe mental impairment. The ALJ's consideration provided in full (Tr. at 17):

\\\\\

> The claimant does not have a psychiatric impairment that is severe. The only medication taken for her mental condition is medical marijuana (Exhibit 8E/2) and there is no evidence of mental status examination in file.

This assessment is accurate only insofar as plaintiff's medical record contains no mental status examination. However, plaintiff testified at the administrative hearing that she was taking Effexor, an antidepressant, as well as medical marijuana (Tr. at 33); in the past plaintiff has also been prescribed Prozac and Wellbutrin (Tr. at 150, 151, 153, 160, 280-281). Plaintiff testified that she was seeing Dr. Sane for treatment of her depression ((Tr. at. 33) but submitted no records in support of this claim. Plaintiff's treating physician, Dr. Rhoades, found plaintiff's depression "reactive" and that she also has anxiety. (Tr. at. 284, 289). While the record shows contention between plaintiff and her former employer, and plaintiff's anger and frustration in those dealings, it does not consistently demonstrate limitations associated with the functional criteria for finding a severe mental impairment, as set forth at of 20 C.F.R. § 404.1520a.

Accordingly, the court finds that plaintiff has failed to demonstrate an independently severe mental impairment.

4. Combined Effect of Plaintiff's Impairments

Finally, in evaluating the severity of plaintiff's impairments and her residual functional capacity, the ALJ must expressly consider the combined impact of all of plaintiff's impairments throughout the disability evaluation process. The ALJ is "required to consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B), 20 C.F.R. § 404.1520(a), (c); Lester v. Chater, 81 F.3d 821, 829 (9th Cir. 1995).

The ALJ failed to meet this requirement as he did not consider throughout the disability analysis the combined impact of plaintiff's pain and gastrointestional disorder.

\\\\\

\\\\\

B. The ALJ Did Not Provide Legally Sufficient Reasons for Rejecting the Opinion of Plaintiff's Treating Physician

Plaintiff contends the ALJ failed to give specific, legitimate reasons for rejecting the opinion of her treating physician, Dr. Patrick Rhoades. Dr. Rhoades was plaintiff's primary physician at Modesto's Central Valley Pain Management & Wellness Clinic for the period February 25, 2003 to September 29, 2003.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. . . . Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d at 830. "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" Id., at 834 (citations omitted).

Dr. Rhoades diagnosed myofascial pain syndrome, fibromyalgia and cervical pain, noting plaintiff's symptoms of neck, shoulder, spine, left arm and finger pain, as well as right knee pain, lung injury, colon problems and upper G.I. upset. Dr. Rhoades opined that plaintiff cannot perform even sedentary work, as she can lift only ten pounds occasionally, less than ten pounds frequently, and can sit and stand/walk less than two hours each in an eight-hour workday. Dr. Rhoades further opined that plaintiff can only occasionally climb stairs and rarely twist, stoop, crouch or climb ladders. Dr. Rhoades specifically noted that plaintiff was not malingering but that her physical condition is impacted by "reactive depression" and anxiety. Dr. Rhoades opined that plaintiff's symptoms, particularly "intractable pain and need for narcotic medication," frequently interfere with her attention and concentration, rendering her "incapable of even 'low stress' jobs." Dr. Rhoades opined that plaintiff's prognosis is poor. (Tr. at 283-289; see also Tr. at 248-274).

\\\\\

The ALJ attributed "insignificant value" to Dr. Rhoades' March 22, 2004 functional capacity assessment on the ground that "claimant testified [May 24, 2004] that she has not seen Dr. Rhoades in 8 months and that she did not see him in March 2004." The ALJ instead relied, inconsistently, on the earlier April 19, 2003 opinion of the orthopedic consultative examiner, Dr. Navdeep Dhaliwal, that plaintiff has no restrictions of sitting, standing or walking, and can lift up to thirty pounds. (Tr. at 18, 199-203). Thus, the ALJ's only express reason for rejecting Dr. Rhoades' residual functional capacity assessment – that plaintiff had not seen Dr. Rhoades since September 2003, six months prior to the preparation of his report – is neither legitimate nor sufficient in light of the ALJ's reliance, without further explanation, on the older medical report of Dr. Dhaliwal.[3] While Dr. Dhaliwal's one-time visit report was based upon contemporaneous physical examination of plaintiff, this fact is not dispositive. Plaintiff's cervical and other impairments are not the type of maladies to vary significantly over time, particularly after stabilization following plaintiff's 2001 cervical surgery. Given Dr. Rhoades' treatment for on-going pain symptoms throughout 2003, it is unlikely Dr. Rhoades' opinion would have been different based upon a contemporaneous examination. Moreover, the ALJ implicitly (and inconsistently) concedes that passage of time is irrelevant by resting his decision on the then 18-month-old opinion of Dr. Dhaliwal which predated Dr. Rhoades' last treatment of plaintiff.

Accordingly, since the ALJ did not provide legally sufficient reasons for rejecting the opinion of plaintiff's treating physician, the court credits Dr. Rhoades' opinion as a matter of

---

[3] Moreover, the ALJ's attempt to "bolster" Dr. Dhaliwal's report based on the even-older August 8, 2002 assessment of plaintiff's physical therapist, Ms. Heidi Sauerwein, that plaintiff can lift ten pounds frequently and twenty pounds occasionally not only falls outside the ALJ's reason for rejecting Dr. Rhoades' opinion but is disingenuous in light of Ms. Sauerwein's "strong recommendation" that plaintiff work at a "sedentary to light" job using an ergonomic chair with appropriate head, neck and feet support. (Tr. at18, 164-168). Nor does the ALJ's reliance on the pre-Rhoades opinions of the nonexamining State Agency physicians (rendered May 3, 2003 and September 15, 2003) that plaintiff can perform the full range of light work come within the ALJ's "temporal rationale" for rejecting Dr. Rhoades' assessment. (Tr. at 18, 204-215, 220-227).

law, Lester v. Chater, 81 F.3d at 830, and concludes that plaintiff is unable to perform even sedentary work.

D. Remand for Benefits

"This court has discretion to remand a case for further evidence or to award benefits." Moore v. Commissioner of Social Security Administration, 278 F.3d 920, 926 (9th Cir. 2002). "The determinative factor whether to order further administrative proceedings is whether there are 'outstanding issues to preclude [the court] from making a disability determination on the merits.'" Smolen v. Chater, 80 F.3d at 1292. An award of benefits is appropriate "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Id. Evidence should be credited and an immediate award directed where '(1) the ALJ failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" Moore, 278 F.3d at 926, quoting Smolen v. Chater, 80 F.3d at 1292.

The ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective complaints and the opinion of plaintiff's treating physician. Crediting either source, but particularly that of plaintiff's treating physician that plaintiff cannot perform even sedentary work, directs a finding of disability. Accordingly, this case is remanded for payment of benefits.

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted; defendant's motion for summary judgment is denied. This case is remanded to the

\\\\\

\\\\\

\\\\\

\\\\\

Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for payment of benefits. The Clerk of Court is directed to enter final judgment.

DATED: 9/25/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH5: Burks0921.ord